PEOPLE ex rel. McKEEVER et al. v. WILLIS, Commissioner of City Works.

(Supreme Court, Appellate Division, Second Department. June 16, 1896.)

MUNICIPAL CORPORATIONS—STREET-CLEANING CONTRACT—POWER TO REJECT BIDS.

    Laws 1894, c. 314, amending Brooklyn City Charter (Laws 1888, c. 583), tit. 15, § 47, provides that from the proposals for street cleaning the commissioner shall select the lowest bidder, provided adequate security be tendered for the performance of the contract, and, if adequate security shall not be tendered, then the commissioner shall select the bid of the next lowest bidder who tenders adequate security, "or if in his judgment the acceptance of either proposal will not be in the interest of the city then he shall reject them all." *Held*, that the commissioner, if he thinks it best for the interests of the city, may reject all the bids without first

determining that neither the lowest bidder nor the next lowest bidder had furnished adequate security for the performance of the contract.

Appeal from special term, Kings county.

Application by Edward J. McKeever and Stephen W. McKeever for a peremptory writ of mandamus to compel Theodore B. Willis, as commissioner of city works of the city of Brooklyn, to award to relators the contract for cleaning the streets and removing the dirt and ashes therefrom for three years, on the ground that they were the lowest bidders for the work, and tendered adequate security for the performance of the contract. The application was denied, and relators appeal. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Almet F. Jenks, for appellants.

Joseph A. Burr, Corporation Counsel, for respondent.

BARTLETT, J.   On February 25, 1896, the respondent, as commissioner of city works, advertised for proposals for cleaning the streets in the city of Brooklyn, and removing the dirt and ashes therefrom, from April 1, 1896, to April 1, 1899. The relators were the lowest bidders. The notice required bidders to give security in the sum of $100,000, but no question was made as to the adequacy of the security offered by the relators. The commissioner of city works, however, rejected their bid, and all the rest (10 in number), on the ground that the best interests of the public demanded their rejection, and more particularly because he became convinced that he had not required security enough to protect the city against loss in the event of a failure to perform the contract, and because further examination satisfied him that the proposals should contain statements as to the places where the respective bidders intended to deposit ashes and the sweepings from the streets. The contention of the relators is that the commissioner had no right thus to reject all the bids, but was bound to award the contract to them, as the lowest bidders offering adequate security. The correctness of this view depends upon the proper construction of the following provision in section 47 of title 15 of the charter of the city of Brooklyn:

"From the proposals so received the said commissioner shall select the lowest bid, provided adequate security be tendered and given for the efficient and proper performance of the contract, and if adequate security shall not be tendered and given as aforesaid, then said commissioner shall select the bid of the lowest bidder who tenders and gives adequate security for the performance of the contract; or if in his judgment the acceptance of either proposal would not be in the interest of the city, then he shall reject them all." Laws 1894, c. 314, amending Brooklyn City Charter (Laws 1888, c. 583).

This provision was put into its present form in 1894. Before that time the charter expressly permitted the commissioner of city works to reject any or all bids for street cleaning. According to the learned counsel for the relators, the effect of the amendment of 1894 was to empower the commissioner to reject all the bids only after he had determined, with reference to the lowest bidder and the next lowest bidder, that neither had furnished adequate se-

curity for the efficient and proper performance of the contract. He made no such determination in the present case, but simply rejected all the bids for the reason already stated. The corporation counsel, on the other hand, while conceding that the legislature of 1894 did intend to limit the discretion of the commissioner by compelling him to award the contract to the lowest responsible bidder if he awarded it at all, nevertheless insists that the amended section leaves the commissioner still at liberty to reject all the bids when, in good faith, such a course seems to him to be demanded by the best interests of the city. We think this is the true construction of the charter provision under consideration. It requires the commissioner, if he accepts any proposal, to accept that of the lowest bidder offering sufficient security; but if the acceptance of no one of the bids, however low, or however adequate the security, seems compatible with the public interest, in the exercise of an honest judgment, then the rejection of all is made obligatory. The word "either," in the last clause of the provision, is evidently used in the sense of "any."

The order appealed from must be affirmed. All concur.